FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 11, 2020

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

RAFAEL O,[1]

                Plaintiff,

     v.

ANDREW M. SAUL, the Commissioner
of Social Security,[2]

                Defendant.

No.   4:19-CV-5114 -EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[3] Plaintiff Rafael O. appeals the denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ erred by 1) improperly weighing the medical opinions; 2)

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Andrew Saul is Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

[3] ECF Nos. 11 & 12.

discounting Plaintiff's symptom reports; 3) improperly determining that the impairments did not meet or equal a listed impairment; and 4) improperly assessing Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical question to the vocational expert at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 11, and denies the Commissioner's Motion for Summary Judgment, ECF No. 12.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[4] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[5] If the claimant is engaged in substantial gainful activity, benefits are denied.[6] If not, the disability-evaluation proceeds to step two.[7]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[4] 20 C.F.R. § 416.920(a).

[5] *Id.* § 416.920(a)(4)(i).

[6] *Id.* § 416.920(b).

[7] *Id.*

or mental ability to do basic work activities.[8] If the claimant does not, benefits are denied.[9] If the claimant does, the disability-evaluation proceeds to step three.[10]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[11] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[12] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[13] If the claimant is able to perform prior work, benefits are denied.[14] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[8] 20 C.F.R. § 416.920(a)(4)(ii).

[9] *Id.* § 416.920(c).

[10] *Id.*

[11] *Id.* § 416.920(a)(4)(iii).

[12] *Id.* § 416.920(d).

[13] *Id.* § 416.920(a)(4)(iv).

[14] *Id.*

economy—in light of the claimant's RFC, age, education, and work experience.[15] If so, benefits are denied. If not, benefits are granted.[16]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[17] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[18]

## II.    Factual and Procedural Summary

Plaintiff filed a Title XVI application, alleging an amended disability onset date of October 28, 2015.[19] His claim was denied initially and upon reconsideration.[20] A video administrative hearing was held before Administrative Law Judge Donna Walker.[21]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since October 28, 2015, the application date;

---

[15] 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[16] 20 C.F.R. § 416.920(g).

[17] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[18] *Id.*

[19] AR 15 & 285-90.

[20] AR 186-92 & 202-11.

[21] AR 72-101.

- Step two: Plaintiff had the following medically determinable severe impairments: lumbago, without sciatica; remote injury (1992), right upper extremity, forearm, elbow, wrist; ulnar nerve damage; arm pain; bilateral first metatarsophalangeal joint arthritis; and obesity;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to:

    perform light work as defined in 20 CFR 416.967(b) except, with the left upper extremity, [Plaintiff] has the ability to lift and/or carry up to 20 pounds occasionally (up to 1/3 of workday), and 10 pounds frequently (up to 2/3 of the workday). With the right upper extremity, [Plaintiff] has the ability to lift and/or carry up to 10 pounds occasionally, and less than 10 pounds frequently. [Plaintiff] has the ability to sit up to 6 hours, and stand and/or walk up to 6 hours. [Plaintiff] has the unlimited ability to push and/or pull, other than as stated for lift/carry. Regarding postural abilities, [Plaintiff] has the unlimited ability to balance, climb ramps or stairs, stoop (i.e., bend at the waist); kneel or crouch (i.e., bend at the knees); but should never crawl, or climb ladders, ropes or scaffolds. [Plaintiff] has the unlimited ability to reach in all directions, including overhead. [Plaintiff] has the unlimited ability to see, hear and communicate. Regarding use of hands, [Plaintiff] has the unlimited ability to handle, for gross manipulation. With his left hand, [Plaintiff] has unlimited use for fingering (fine manipulation) or feel (use of skin receptors). With his right hand, [Plaintiff] has the ability to occasionally finger and feel. Regarding the environment, [Plaintiff] has no limitations regarding exposure to extreme cold, extreme heat, wetness, humidity, noise, fumes, odors, dust, gases or poor ventilation or vibration; but should avoid concentrated exposure to hazards, such as dangerous machinery and unprotected heights.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of performing work that existed in significant numbers in the national economy, such as storage facility rental clerk, furniture rental consultant, and coin machine collector.[22]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the reviewing opinion of Norman Staley, M.D.;

- partial weight to the treating opinions of Nicolas DeJong, PAC; and

- little weight to the reviewing opinions of Brent Packer, M.D., and Myrna Palasi, M.D.[23]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[24]

---

[22] AR 12-30.

[23] AR 23.

[24] AR 21-23.

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[25] Plaintiff timely appealed to this Court.

### III.   Standard of Review

A district court's review of the Commissioner's final decision is limited.[26] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[27] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[29] The Court considers the entire record as a whole.[30]

---

[25] AR 1-6 & 276-77.

[26] 42 U.S.C. § 405(g).

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[30] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

## IV.    Analysis

### A.    Medical Opinions: Plaintiff establishes consequential error.

Plaintiff challenges the ALJ's weighing of the opinions of Myrna Palasi, M.D., Nicolas DeJong, PA-C, and Brent Packer, M.D. The Court agrees the ALJ erred in failing to meaningfully explain why he discounted these medical opinions in regard to Plaintiff's right upper extremity, and therefore the Court is unable to assess whether the ALJ's findings are supported by substantial evidence.

The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a non-examining physician who neither treated nor examined the claimant.[34] Generally, more weight is given to

---

1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[31] *Molina*, 674 F.3d at 1111.

[32] *Id.* at 1115 (quotation and citation omitted).

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[34] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

the opinion of a treating physician than to the opinion of a non-treating physician.[35] When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.[36] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source may be rejected for specific and germane reasons supported by substantial evidence.[37] The opinion of a nonexamining physician serves as substantial evidence if it is supported by other independent evidence in the record.[38]

### 1. Dr. Palasi

Plaintiff significantly injured his right upper extremity, including his wrist, forearm, and elbow in 1992. Even after surgeries in 1993, Plaintiff continued to experience functional limitations with his right upper extremity and hand. In April 2013, Dr. Palasi reviewed a 2013 medical report prepared by PA-C Paul Furan and a 2013 clinical record.[39] Dr. Palasi found that Plaintiff, in regard to his right upper

---

[35] *Id.*

[36] *Id.*

[37] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[38] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[39] AR 402.

extremity, had weakness and atrophy; decreased range of movement of his right elbow, wrist, and fingers; poor grip; and loss of fine motor skills.[40] Dr. Palasi opined that due to Plaintiff's right arm conditions that he was more limited than the sedentary work restrictions in regard to lifting and carrying, which is a ten-pound lifting restriction and frequent lifting or carrying of small articles such as files or small tools.

The ALJ gave little weight to Dr. Palasi's opinion because it was "inconsistent with the longitudinal record."[41] While consistency with the medical record is a factor for the ALJ to consider, the ALJ did not explain in the paragraph pertaining to Dr. Palasi why the opinion was inconsistent with the longitudinal record.[42] In other sections of the opinion, the ALJ discussed portions of the medical record and other medical opinions, but the ALJ's opinion still as a whole does not permit the Court to meaningfully assess whether the ALJ's finding that Dr. Palasi's opinion was inconsistent with the longitudinal record relating to Plaintiff's right arm is supported by substantial evidence.[43]

---

[40] AR 402-04.

[41] AR 23.

[42] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole).

[43] *See Nguyen v. Chater*, 100 F.3d 1362, 164 (9th Cir. 1996); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence

The medical record reflects that, even after surgeries to his right upper extremity, Plaintiff's functioning was limited.[44] For instance, in March 2013, PA-C Paul Furan found that both Plaintiff's musculoskeletal and nervous systems were abnormal as to his right upper extremity and that Plaintiff had poor strength and grip in his right arm and therefore could not guide a forklift's hand controls with his right hand as he was unable to do any fine manipulation.[45] Mr. Furan stated, "I cannot see any treatment that can reverse this injury."[46] In April 2013, Brent Bingham, D.O. found that Plaintiff had nerve damage to his right hand with no

---

supporting the found conflict to permit the court to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[44] The administrative record did not contain any medical records before March 2013. The prior ALJ decision from 2015 discusses some of the prior medical evidence, including a March 2013 report by Elizabeth Anderson, PA-C and a 2014 examination performed by Dr. Wing Chau, which are not part of the current administrative record. AR 105-118.

[45] This was a report that Dr. Palasi reviewed. AR 402 (relying on AR 395-97).

[46] AR 397.

sensation to the tips of his fingers, although they did have function.[47] In January 2015, Plaintiff was observed by a nurse to have weak right-hand grip.[48]

In January 2016, PA-C Nicholas DeJong, who often was Plaintiff's treating provider, observed tenderness and a visible spasm of the bilateral paraspinal muscles, decreased range of motion of the right elbow and wrist, and 1/5 right-hand grip strength.[49] Mr. DeJong completed a Physical Functional Evaluation and diagnosed Plaintiff with right wrist and elbow dysfunction/disorder, decreased hand sensation, and ulnar nerve damage, all of which markedly interfered with Plaintiff's ability to perform basic work-related activities.[50] Mr. DeJong found that Plaintiff's right upper extremity condition caused a limited ability to grip, hold, sense, and fully move his right arm and hand, decreased elbow extension, decreased grip strength (1/5), tingling sensation in his fourth and fifth digits, and numbness in his first and third digits. Mr. DeJong marked that Plaintiff was able to perform sedentary work, which was defined, in part, as including the ability to lift ten pounds maximum and frequent lift or carry lightweight articles. Mr. DeJong found that Plaintiff's right upper extremity limitations were to last

---

[47] AR 588.

[48] AR 408.

[49] AR 437-38.

[50] AR 438-39 & 543-44.

indefinitely and would not improve. Mr. DeJong's report was reviewed and adopted by a physician.[51]

Two weeks later, Brent Packer, M.D. reviewed PA-C DeJong's cosigned January 2016 report, Dr. Palasi's 2013 report, and the co-signed report prepared by Elizabeth Anderson, PA in 2013.[52] Dr. Packer diagnosed Plaintiff with internal derangement of the forearm and dysfunction of the hand, elbow, and wrist with ulnar damage. Dr. Packer stated:

> Recommend change to less than sedentary highest work activity. [Claimant] is unable to [lift/carry] even small articles frequently with the [right upper extremity] due to such extensive and permanent damage along with chronic pain that appears to interfere with [activities of daily living]. Recommend benefit to [claimant] due to the permanent condition with chronic pain.[53]

In July 2016, Mr. DeJong treated Plaintiff for decreased range of motion in his right shoulder, which was causing numbness and tingling down his right arm

---

[51] The co-signing physician was Flint Orr, M.D. The Court acknowledges that neither party nor (possibly) the ALJ deciphered Dr. Orr's signature. The ALJ did not mention Dr. Orr or that a physician co-signed Mr. DeJong's two reports. AR 544 & 552.

[52] AR 458-61.

[53] AR 458.

to his fingers.[54] In August 2016, Mr. DeJong conducted Plaintiff's annual exam.[55] Mr. DeJong found a "baseline decrease in [range of movement] of right elbow and wrist" and "baseline decrease in sensation of right hand."[56] In December 2016, Plaintiff was treated for a laceration to his right palm, which occurred when he pushed a vase down in the trash.[57] Plaintiff reported that he does not feel pain in his right hand due to chronic numbness.[58]

In September 2017, Mr. DeJong treated Plaintiff for a follow-up for reported shoulder pain.[59] Plaintiff exhibited decreased range of motion in the right shoulder along with decreased strength in the right shoulder flexion and abduction. Mr. DeJong found the right shoulder condition was due to Plaintiff guarding his right elbow and wrist, resulting in inactivity of the right shoulder.

Two months later, Plaintiff visited Mr. DeJong for completion of forms relating to his claimed disability due to his right wrist and elbow dysfunction and right ulnar nerve damage.[60] Based on the injuries to the right upper extremities,

---

[54] AR 553.

[55] AR 557-61.

[56] AR 558.

[57] AR 494.

[58] *Id.*

[59] AR 570-71.

[60] AR 550-52 & 573-77.

Mr. DeJong found that Plaintiff had a limited ability to grip due to decreased finger and hand grip (2/5) and limited ability to fully move his right arm, wrist, and hand, along with decreased sensation and strength in his right fingers. Mr. DeJong limited Plaintiff to sedentary work (defined as being able to lift ten pounds maximum and frequently lift or carry lightweight articles) indefinitely and noted that the injury to the wrist and elbow was long term and that the right upper extremity was as strong as it would be. Mr. DeJong's report was reviewed and co-signed by Dr. Orr.

The medical record reflects that Plaintiff consistently reported, and was observed with, limitations to his right upper extremity, including weakened grip and strength, reduced sensation in his fingers, and reduced range of motion of the hand, wrist, and arm. Moreover, Dr. Palasi's opinion that Plaintiff's functions with his right upper extremity were more limited than the typical upper-extremity restrictions associated with sedentary work is largely consistent with Dr. Packer's opinion and Mr. DeJong's cosigned opinions.

The Commissioner argues that the ALJ was not required to discuss Dr. Palasi's opinion because it pertained to the period already adjudicated by the prior ALJ decision.[61] While the ALJ may not have been required to discuss Dr. Palasi's opinion, Plaintiff's right-upper-extremity condition has been longstanding and therefore that the ALJ considered Dr. Palasi's opinion inconsistent with the

---

[61] ECF No. 12 at 16 (citing AR 113).

longitudinal record reflects, at least in a conclusory manner, the ALJ's interpretation of the record. On this medical record, without the ALJ offering a meaningful explanation as to why Dr. Palasi's opinion was "inconsistent with the longitudinal record," the ALJ erred by discounting Dr. Palasi's opinion.[62]

### 2. PA-C DeJong

Physician's assistant Mr. DeJong treated Plaintiff for a variety of medical conditions. On two occasions Mr. DeJong completed a Physical Functional Evaluation for Plaintiff.[63] The first evaluation occurred January 28, 2016. Due to Plaintiff's prior injury and surgeries to his right upper extremity to repair his tendons and vessels, Mr. DeJong diagnosed Plaintiff with right wrist dysfunction/disorder, right elbow dysfunction/disorder, decreased hand sensation, and ulnar nerve damage, all of which Mr. DeJong opined markedly interfered with Plaintiff's ability to perform basic work-related activities.[64] Mr. DeJong found that Plaintiff had a limited ability to grip, hold, sense, and fully move his right arm and hand, decreased elbow extension, decreased grip strength (1/5), tingling sensation in his fourth and fifth digits, and numbness in his first and third digits. Mr.

---

[62] AR 23. *See Embrey*, 849 F.2d at 421-22 (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding); *Blakes*, 331 F.3d at 569 (same).

[63] AR 437-41, 542-46, & 550-52.

[64] AR 438-39 & 543.

DeJong marked that Plaintiff was able to perform sedentary work, which was defined, in part, as including the requirements of lifting ten pounds and frequently lifting or carrying lightweight articles.[65] Mr. DeJong found that Plaintiff's right upper extremity limitations were to last indefinitely. Mr. DeJong's report was reviewed and adopted by Dr. Orr.

In November 2017, Mr. DeJong issued another report that was again reviewed and adopted by the same physician.[66] Based on the injuries to the right upper extremity, Mr. DeJong found that Plaintiff had a limited ability to grip, hold, and fully move his right arm, wrist, and hand. Mr. DeJong limited Plaintiff to sedentary work indefinitely.

The ALJ gave partial weight to Mr. DeJong's co-signed 2016 and 2017 opinions because while Mr. DeJong "appeared to base his opinion on his objective findings . . . the limitation is not consistent with the longitudinal record."[67] The ALJ also discounted Mr. DeJong's 2017 opinion because he did not refer to Plaintiff's bilateral foot arthritis, thus indicating that Mr. DeJong did not evaluate Plaintiff's full capabilities.

First, the parties disagree as to what standard applies to the ALJ's weighing of Mr. DeJong's opinions, which were both co-signed by Dr. Orr. Plaintiff argues

---

[65] AR 544.

[66] AR 550-52.

[67] AR 23.

that the ALJ was required to articulate legitimate and specific reasons for discounting these co-signed opinions, while the Commissioner argues that the ALJ was only required to give germane reasons for discounting Mr. DeJong's opinion, even if it was co-signed by a physician.[68]

It is undisputed that, per the regulations that apply to Plaintiff's application, Mr. DeJong, as a physician's assistant, is an "other" medical source.[69] The ALJ is to use "other" medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work."[70] The ALJ may not reject the competent testimony of "other" medical sources without comment.[71] In order to reject the competent testimony of "other" medical sources, the ALJ must give specific "reasons germane to each witness for doing so."[72]

---

[68] *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) (discussing 20 C.F.R. § 416.913).

[69] *See* 20 C.F.R. § 416.902(a)(8) (including licensed physician's assistant as acceptable medical source for impairments within his licensed scope of practice "only with respect to claims filed . . . on or after March 27, 2017").

[70] SSR 06-03p, 2006 WL 2329939, at *2; 20 C.F.R. § 416.913(a(3).

[71] *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).

[72] *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

Here, there can be no dispute that Mr. DeJong's diagnosis as to Plaintiff's right upper extremity is supported by the medical evidence. The focus instead is on what standard applied to the ALJ's weighing of Mr. DeJong's co-signed opined limitations and whether the ALJ satisfied the applicable standard. Unfortunately, the ALJ neither states whether she was treating Mr. DeJong's opinions as opinion from an "other source" for which she was to provide germane and specific reasons supported by substantial evidence for discounting, or as opinions from a medical provider, given that Dr. Orr co-signed Mr. DeJong's two reports, for which the ALJ was to provide, at a minimum, specific and legitimate reasons supported by substantial evidence for discounting.[73] Regardless, the ALJ's offered reasons for discounting Mr. DeJong's opinions fail even under the lenient germane-reasons standard.

Similar to Dr. Palasi, the ALJ failed to offer an explanation as to how Mr. DeJong's opinions were inconsistent with the longitudinal medical evidence. The ALJ's discussion of the medical evidence merely summarizes the treatment records and offers no interpretation thereof as to how it is inconsistent with Mr. DeJong's opinions that Plaintiff's abilities to grip, hold, sense, and fully move his right arm and hand were markedly limited, restricting him to lifting ten pounds maximum along with frequently lifting or carrying lightweight articles.

---

[73] The ALJ did not even note that Mr. DeJong's opinions were reviewed and co-signed by a physician. *See* 20 C.F.R. § 416.927; *Gomez*, 74 F.3d at 970-71.

The ALJ also discounted Mr. DeJong's 2017 opinion because he did not refer to Plaintiff's bilateral foot arthritis, "indicating he did not evaluate [Plaintiff's] full capabilities."[74] While a provider's failure to evaluate a condition may be critical to analyzing his opinion, here the focus of Mr. DeJong's functional report was Plaintiff's functional abilities with his upper extremities, specifically his right upper extremity. That Mr. DeJong did not refer to Plaintiff's bilateral foot arthritis in his report was not a germane reason to discount his assessment as to Plaintiff's right-upper-extremity abilities.[75]

In sum, the ALJ failed to provide sufficiently articulated reasons for discounting Mr. DeJong's opinions.

3.  Dr. Packer

In February 2016, Dr. Packer reviewed Dr. Palasi's report, Mr. DeJong's January 2016 report, and Ms. Anderson March 2013 report.[76] Dr. Packer diagnosed Plaintiff with internal derangement of the forearm and dysfunction of the hand, elbow, and wrist with ulnar damage. Dr. Packer found that Plaintiff had marked non-exertional restrictions, postural restrictions, and gross or fine motor skill

_____

[74] AR 23.

[75] *See Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (recognizing that it is not legitimate to discount an opinion for a reason that is not responsive to the medical opinion).

[76] AR 458-61.

restrictions. He opined that, while Plaintiff was able to perform sedentary exertional levels with his left upper extremity, he was limited to less than sedentary exertional levels for his right upper extremity because Plaintiff was unable to lift or carry even small articles frequently with his right upper extremity.

The ALJ assigned Dr. Packer's opinion little weight because 1) he did not have the opportunity to examine Plaintiff, and 2) Dr. Packer had access to limited records.[77] First, the number of visits a claimant had with a particular provider is a relevant factor in assigning weight to an opinion.[78] However, all opinions, including the opinions of nonexamining providers, are to be considered.[79] Here, the ALJ gave great weight to the nonexamining opinion of Norman Staley, M.D. while at the same time discounting Dr. Packer's nonexamining opinion. Therefore, that Dr. Packer had not examined Plaintiff was not a legitimate reason to discount Dr. Packer's opinion given the great weight given to the opinion of Dr. Staley, whom also did not examine Plaintiff.

Second, the ALJ gave more weight to Dr. Staley's nonreviewing opinion because he reviewed more records than Dr. Packer, who only noted that he reviewed Dr. Palasi's report, Ms. Anderson's report, and Mr. DeJong's 2016 report. That Dr. Staley reviewed more of the medical record is a specific and legitimate

---

[77] AR 23.

[78] 20 C.F.R. § 416.927(c).

[79] 20 C.F.R. § 416.927(b), (c).

factor to assign his opinion more weight than Dr. Packer's opinion, so long as Dr. Staley's (rather than Dr. Packer's) opinion is more consistent with the longitudinal record. The ALJ's failure to meaningfully explain how Dr. Staley's opinion, rather than Dr. Packer's opinion, was more "consistent with the objective evidence available at the time of his [review] as well as the longitudinal record," prevents the Court from reviewing whether the ALJ's interpretation is supported by substantial evidence.[80] The ALJ failed to meaningfully articulate the reasons for discounting Dr. Packer's opinion.

    4.    <u>The ALJ's errors are consequential.</u>

Remand is required only if an error is consequential. The Court finds the ALJ's failure to explain her findings supporting her decisions to discount the opinions Dr. Palasi, Mr. DeJong, and Dr. Packer is a consequential error.[81] If these opinions are granted more weight, the RFC will be more restrictive as to the upper right extremity. Dr. Packer opined that Plaintiff could not even lift or carry "small articles frequently" with his right upper extremity.[82] Dr. Palasi opined that Plaintiff's lifting and carrying abilities were more limited than typical sedentary work, which permits frequent lifting and carrying of lightweight articles.[83] And

---

[80] *See Embrey*, 849 F.2d at 421-22.

[81] *See Molina*, 674 F.3d at 1111 & 1115.

[82] AR 458.

[83] AR 541.

although Mr. DeJong opined that Plaintiff could frequently lift and carry lightweight articles, the ALJ did not discuss whether lifting and carrying lightweight articles is the equivalent to lifting and carrying up to ten pounds, as permitted by the RFC.[84] If these opinions are given more weight, Plaintiff's right upper extremity limitations may be work preclusive, as the vocational expert testified that a sedentary RFC with continuing non-use of the right upper extremity is work preclusive.[85]

## B. Plaintiff's Symptom Reports: Plaintiff establishes error.

Plaintiff argues the ALJ failed to provide valid reasons for rejecting his symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[86] Second, "[i]f the claimant meets

---

[84] AR 544 & 552 (differentiating between light work, which requires the ability to frequently lift or carry up to 10 pounds," and "sedentary work, which requires the ability to "frequently lift or carry lightweight articles"); 20 C.F.R. § 416.967(a) (defining sedentary work as, in part, involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools").

[85] AR 86.

[86] *Molina*, 674 F.3d at 1112.

the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[87] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his right-upper-extremity symptoms inconsistent with the objective medical evidence, failure to seek additional care, and activity level.[88]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[89] However, medical evidence is a relevant factor in considering the severity of the reported symptoms. [90] As discussed above, the ALJ's summary about the objective medical evidence relating to Plaintiff's right upper extremity is inadequate to permit the Court to determine whether the ALJ's conclusory findings as to the medical opinions is supported by substantial evidence. Similarly, the Court finds the ALJ's summary of the objective medical evidence fails to

---

[87] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[88] AR 21-23.

[89] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[90] *Id.*

sufficiently explain how Plaintiff's reported symptoms about his right upper extremity are inconsistent with the medical record.

Second, the ALJ appears to discount Plaintiff's symptom reports because he did not seek additional care from November 2016 to April 2017 and because the April 2017 exam notes reflect normal range of motion of his extremities and intact motor and sensory function.[91] Any decision to discount Plaintiff's right-upper-extremity symptoms because Plaintiff did not seek additional care is not a legitimate reason supported by substantial evidence on this record.[92] PA-C DeJong did not recommend any treatment, noting twice that Plaintiff's right upper extremity was as strong and healed as it would be, and Dr. Packer found that the condition was permanent.[93]

The ALJ also cited to April 2017 examination notes. However, examination notes must be read in their context.[94] On this visit, Plaintiff was being seen for

---

[91] AR 22 (citing AR 498-507).

[92] *See* SSR 16-3p (recognizing that a "medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual").

[93] AR 397, 552, & 548.

[94] *See Orn*, 495 F.3d at 634 ("The primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations. We therefore do not require that a medical

chest pain. Although the notes state under the musculoskeletal section, "normal range of motion [and] no edema,"[95] and under the extremities section, "atraumatic, normal [range of motion], no significant lower extremity edema,"[96] these notes cannot be used solely to discount Plaintiff's symptom reports because Plaintiff was not seeking care for his right upper extremity during this appointment. Moreover, as discussed above, there is no medical recommendation that Plaintiff pursue further treatment for his right upper extremity, other than stretching exercises to reduce the symptoms associated with Plaintiff's right shoulder given his reduced use of his right upper extremity.

Finally, the ALJ found Plaintiff's testimony that he is inactive inconsistent with his statement to Jared Clifford, DPM, who treated Plaintiff for bilateral foot pain in April 2017 and who noted that Plaintiff reported he was "very active."[97] While an ALJ may discount a claimant's symptom reports on the basis of inconsistent statements, the ALJ failed to explain the basis for his finding that Plaintiff's testimony is inconsistent with his statement to Dr. Clifford. Plaintiff testified as to being limited in his ability to use his right arm, lift without causing

_____

condition be mentioned in every report to conclude that a physician's opinion is supported by the record.").

[95] AR 499.

[96] AR 503.

[97] AR 22 (citing AR 532).

back pain due to poor mechanics, fatigue of his left hand due to using it, and walk

for long distances, and stand at times if his toes get "stuck."[98] The ALJ's conclusory

finding that Plaintiff offered inconsistent statements is not sufficient for the Court

to determine that the ALJ's finding is supported by substantial evidence. Because

this matter is getting remanded for a reweighing of the medical evidence and in

light of the ALJ's failure to explain how the objective medical evidence is

inconsistent with Plaintiff's reported symptoms and in discounting Plaintiff's

reported right upper extremity symptoms for failure to seek treatment and the

fairly benign observations during the April 2017 examination for chest pain, the

Court directs the ALJ to reassess Plaintiff's symptom reports on remand. On this

record, a purported single inconsistent statement is insufficient to discount

Plaintiff's reported symptoms as to his right upper extremity.

## C.    Step Three (Listings): The ALJ must reevaluate.

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did

not meet Listings 1.07 (fracture of an upper extremity) or 1.08 (soft issue injury),

singly, or in combination. On remand, the ALJ is to reassess whether Plaintiff's

impairments meet these Listings singly, or in combination. In making this

---

[98] AR 88-100. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may

consider "ordinary techniques of credibility evaluation," such as reputation for lying,

prior inconsistent statements concerning symptoms, and other testimony that

"appears less than candid.").

reassessment, the ALJ is to consider whether a physical consultative examination should be conducted and determine whether a medical expert should be called at the hearing to discuss whether Plaintiff's conditions meet or equal a Listing.

## D. RFC and Step Five: The ALJ must reevaluate.

Plaintiff argues that the ALJ's hypothetical failed to account for all of his limitations, including a sedentary RFC with less than occasional use of the right dominant arm and being off task more than 10 percent of the workday due to pain and other limitations. Because the ALJ's RFC was based on an erroneous weighing of the medical evidence and Plaintiff's symptom reports, the ALJ on remand is to reassess Plaintiff's RFC and proceed with a new step-five analysis.

## E. Remand for Further Proceedings

As explained above, the ALJ consequentially erred. However, even if the medical opinions of Dr. Palasi, Mr. DeJong, and Dr. Packer are given great weight, the record would not remain free from conflicts, as Dr. Staley opined that Plaintiff could perform light work and lift less than ten pounds frequently with his right upper extremity. Therefore, the record as a whole creates serious doubt that Plaintiff is disabled; therefore, remand for further proceedings, rather than for an award of benefits, is necessary.[99]

---

[99] *See Garrison*, 759 F.3d at 1021; *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

On remand, the ALJ is to consider scheduling a consultative physical examination, reweigh the medical-opinion evidence, reevaluate Plaintiff's symptom reports, and, if necessary, complete the sequential analysis.

## V. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.  The Clerk's Office is directed to substitute Andrew M. Saul, Commissioner of the Social Security Administration, as the Defendant.

2.  Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

3.  The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

4.  The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

5.  The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 11th day of March 2020.

_____
s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge
